UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANTE MICHELUCCI,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF NAPA, et al.,<br><br>Defendants. | Case No. 18-cv-05144-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 26 |

Plaintiff Dante Michelucci brought this lawsuit against Napa County and three of its employees, Lenard Vare, Joseph Fallon, and Brandon Kemp (collectively, "Defendants"), alleging that they violated the United States Constitution, the Family Medical Leave Act ("FMLA"), and California law by discriminating, harassing, and retaliating against him when he was employed as a Napa County correctional officer. *See* Complaint, Dkt. No. 1; First Amended Complaint ("FAC"), Dkt. No. 23. Napa County moved to dismiss the *Monell*, associational race discrimination, and FMLA interference claims. *See* Motion to Dismiss ("Mot."), Dkt. No. 26; Joint Stipulation, Dkt. No. 46. For the following reasons, the Court **GRANTS** the motion to dismiss the § 1983 *Monell* claims but **DENIES** the motion to dismiss the associational race discrimination and FMLA claims.

## I. BACKGROUND

### A. Factual Allegations

The following facts are taken from the first amended complaint and are presumed to be true at the motion to dismiss stage. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Michelucci was hired as a Napa County correctional officer in March 2007. FAC ¶ 16.

During his tenure as a correctional officer, Michelucci earned several letters of commendation and was promoted to the position of Field Training Officer. *Id.* Defendants Vare and Fallon were employed as supervisory correctional officers and Defendant Kemp was employed as a correctional officer. *Id.* ¶¶ 5–7.

For a roughly twelve-month period in 2017 and 2018, Defendants harassed Michelucci, creating a hostile work environment. *See id.* ¶¶ 18–20. For example, Defendants referred to Michelucci as "bi-curious" and "gay," made crude and pejorative comments to him, and hung pictures in the workplace to suggest that Michelucci was gay. *Id.* ¶ 20. Defendants "targeted other correctional employees in the same manner." *Id.*

Defendants also "harassed" Michelucci because he "refused to fail or disqualify an African-American employee that he was supervising and training." *Id.* ¶ 19. Defendants "simply did not want to work with an African-American correctional officer" and told Michelucci that the trainee "just doesn't fit in." *Id.*

Michelucci "reported this conduct to his supervisor." *Id.* ¶ 21. Because "nothing was done," Michelucci "made several workplace complaints" to Vare, who "had overall managerial responsibility for the [correctional] facility." *Id.* Michelucci told his supervisors that he had been diagnosed with "PTSD, stress, and anxiety disorder, as a direct result of the harassment at work" and that the stress caused him to have an attack of Bell's palsy. *Id.* Rather than investigate Michelucci's concerns, the managers told him to "stand up" for himself and that the harassment was a sign that his co-workers liked him. *Id.* ¶ 22.

In October 2017, after Michelucci had lodged his complaints, a sergeant met with the staff; according to one staff member, the sergeant "threw [Plaintiff] under the bus" at this meeting. *Id.* ¶ 24 (alteration in original). After the meeting, Michelucci's "work locker was littered with pictures of the gay pride parade." *Id.* ¶ 25. Supervisors and staff refused to speak to Michelucci and someone spit into his coffee cup. *Id.* On November 21, Michelucci realized that the batteries in his flashlight and radio had been removed and hidden; as a result, his supervisor accused him of being "out of uniform." *Id.* ¶ 26. On December 2, Michelucci "found another gay pride picture on his work locker." *Id.* ¶ 27.

1   Michelucci again complained to Vare and "begged for assistance." *Id.* ¶ 28. But Vare told Michelucci that he was "stressed out" from his "father dying," not from the harassment. *Id.*

From December 2017 to April 2018, Michelucci "continued to experience harassment on a daily basis . . . based on the perception that [he] was 'gay' or bi-sexual." *Id.* ¶ 29. On April 17, 2018, Fallon twice made unprompted, degrading comments to Michelucci. *Id.* ¶¶ 30–31. As a result of Fallon's comments, Michelucci "completely broke down," sought urgent medical care, and was removed from the workplace by his physician for 90 days on protected medical leave. *Id.* ¶ 32.

While Michelucci was on medical leave, Napa County began an investigation into his workplace complaints. *Id.* ¶ 33. Napa County "demanded that [he] attend an interview and 'cooperate' in the investigation," even though he was "seeking daily treatment and care." *Id.* ¶ 34. When Michelucci "explained that he was on FMLA leave, Defendants then accused [him] of failing to cooperate" in the investigation. *Id.*

Defendants' actions forced Michelucci to "involuntarily resign his employment." *Id.* ¶ 35.

### B. Procedural History

Michelucci filed his initial complaint on August 22, 2018. *See* Dkt. No. 1. After Napa County moved to dismiss the complaint on October 9, *see* Dkt. No. 17, Michelucci filed a first amended complaint on October 23, *see* FAC. Michelucci named Napa County, Fallon, Kemp, Vare, and Does 1 through 50 as Defendants. *See* FAC ¶¶ 2–7, 9. He asserted six causes of action: (1) violation of his due process and equal protection rights under 42 U.S.C. § 1983 (all Defendants); (2) race discrimination association under Cal. Gov't Code § 12940 (Napa County); (3) retaliation under Cal. Gov't Code § 12940(h) (Napa County); (4) harassment under Cal. Gov't Code § 12940 (Fallon, Kemp, Napa County); (5) gender discrimination under Cal. Gov't Code § 12940 (Napa County); (6) FMLA interference (Napa County); and (7) intentional infliction of emotional distress (all Defendants). *See* FAC ¶¶ 36–75.

On November 6, 2018, Napa County moved to dismiss the first, second, third, fourth, fifth, and sixth causes of action in the FAC. *See* Mot. at 14. Michelucci opposed on December 21, *see* Dkt. No. 34 ("Opp."), and Napa County replied on January 4, 2019, *see* Dkt. No. 35 ("Reply").

3

After Michelucci requested judicial notice of his amended Department of Fair Employment and Housing ("DFEH") complaint, *see* Dkt. No. 41, Napa County withdrew the portions of its motion seeking dismissal based on failure to exhaust administrative remedies. *See* Dkt. Nos. 45, 46. The Court held a hearing on February 21, 2019, after which it took the motion under submission. *See* Dkt. No. 49 (minute entry).

**II.  LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031. Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). And even where facts are accepted as true, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation marks and citation omitted).

If dismissal is appropriate under Rule 12(b)(6), a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quotation marks and citation omitted).

**III. DISCUSSION**

Napa County moves to dismiss Michelucci's *Monell*, associational race discrimination, and FMLA causes of action. *See* Mot.; Joint Stipulation, Dkt. No. 46. The Court discusses each cause of action in turn.

**A. The Court Grants the Motion to Dismiss the *Monell* Claims But Grants Leave to Amend**

Michelucci alleges two theories for constitutional violations by Napa County: one for violating his due process rights and one for violating his equal protection rights. *See* FAC ¶¶ 37–39. Napa County moves to dismiss, arguing that Michelucci fails to state a cause of action because his allegations "are wholly conclusory recitations of the elements." Mot. at 4. The Court agrees and dismisses the constitutional claims against Napa County with leave to amend.

**i. Legal Standard for *Monell* Liability**

A "municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). To plausibly state a claim for municipal liability under *Monell*, a plaintiff must allege unconstitutional conduct attributable to "(1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). Thus, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Rather, the plaintiff must "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* At the pleading stage, a plaintiff's *Monell* claim "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts" to provide the opposing party with fair notice so it can defend itself. *See AE v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

**ii. Due Process Claim**

Michelucci's first theory is that Napa County violated his Fourteenth Amendment due process rights when it constructively terminated him "without providing any due process." FAC ¶ 38. Napa County contends that "Plaintiff's allegations are wholly conclusory recitations of the

5

elements of *Monell* liability" and thus must be dismissed. *See* Mot. at 4.

Public employees with for-cause protection are entitled, under the Due Process Clause, to notice and a pre-termination hearing. *Walls v. Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 968 (9th Cir. 2011). Michelucci does not plead any facts to support his conclusory allegation that Napa County had a policy, practice, or custom of violating employees' due process rights. *See Levine v. City of Alameda*, 525 F.3d 903, 907 (9th Cir. 2008) (affirming summary judgment for municipal defendant because terminated plaintiff "produced no evidence" of policy or custom amounting to deliberate indifference to due process rights). To the contrary, Michelucci suggests that Napa County did not follow its policies when he alleges that the County failed to conduct an investigation "as required by [its] own policies and procedures." *See* FAC ¶ 38.

Because Michelucci has not alleged sufficient facts to support a *Monell* claim against Napa County under a due process theory, the Court **GRANTS** the motion to dismiss. However, because the Court cannot say that amendment would be futile, the Court grants leave to amend the complaint.

### iii. Equal Protection Claim

Michelucci's second theory is that Napa County violated his equal protection rights based on its "custom, pattern, and practice" of treating correctional officers perceived as homosexual or bisexual "unequally" and operating its jail "in a discriminatory, harassing, and retaliatory manner against homosexuals and people of color." FAC ¶ 39. But Michelucci does not plead any facts to support his contention that Napa County had a policy of violating equal protection rights. *See Franklin v. City of San Leandro*, No. 17-CV-00789-HSG, 2018 WL 1609525, at *1 (N.D. Cal. Apr. 3, 2018) (dismissing *Monell* claims as "entirely conclusory" because the plaintiff failed to identify the municipality's "specific policy or custom"). Other than vaguely alleging that "Defendants targeted other correctional employees in the same manner," FAC ¶ 20, Michelucci does not plead any specific facts to support his assertion that Napa County had a pervasive practice or custom of violating equal protection rights outside of his case. *See Bagley v. City of Sunnyvale*, No. 16-CV-02250-LHK, 2017 WL 344998, at *15 (N.D. Cal. Jan. 24, 2017) (finding no custom, policy, or practice to support *Monell* claim because "Plaintiff only pleads actions

6

related to his own arrest and prosecution"). Finally, to the extent that Michelucci is attempting to bring a theory predicated on a failure to supervise, he has not made any allegations that the failure to supervise was a "conscious" or "deliberate" choice by Napa County, as is required for *Monell* liability. *See Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008).

Because Michelucci has not alleged sufficient facts to support a *Monell* claim against Napa County under an equal protection theory, the Court **GRANTS** the motion to dismiss. However, because the Court cannot say that amendment would be futile, the Court grants Michelucci leave to amend.

### B. The Court Denies the Motion to Dismiss the Associational Race Discrimination Claim

Michelucci alleges that Napa County discriminated against him based on his association with an African-American employee, including his "refusal to wrongfully discipline" that employee. FAC ¶¶ 43–48. Napa County moved to dismiss, contending that the FAC "fails to allege *any* specific facts regarding his claim for associational race discrimination." Mot. at 5.

California's FEHA makes it unlawful for an employer to discriminate against any person "in terms, conditions, or privileges of employment" because of race or color, among other protected categories. *See* Cal. Gov't Code § 12940(a). The "discrimination provision addresses only *explicit* changes in the 'terms, conditions, or privileges of employment,'" meaning that "the *institution or corporation itself* must have taken some official action with respect to the employee, such as hiring, firing, failing to promote, adverse job assignment, significant change in compensation or benefits, or official disciplinary action." *Roby v. McKesson Corp.*, 219 P.3d 749, 761 (Cal. 2009) (emphasis in original).

The FEHA separately prohibits an employer from harassing employees because of race or color, among other protected categories. *See* Cal. Gov't Code § 12940(j)(1); *see also Roby*, 219 P.3d at 761 ("In the FEHA, the terms 'discriminate' and 'harass' appear in separate provisions and define distinct wrongs."). As opposed to discrimination, "harassment focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed

employee." *Roby*, 219 P.3d at 761 (emphasis in original). Harassment is "unlawful if the entity, or its agents or supervisors, knows or should have known of [the harassment] and fails to take immediate and appropriate corrective action." Cal. Gov't Code § 12940(j)(1). If the harasser is a supervisor, the employer is strictly liable; if the harasser is not a supervisor, the employer is liable if it was negligent. *See Roby*, 219 P.3d at 761–62.

The FEHA's prohibition against discrimination or harassment because of race and color "includes a perception . . . that the person is associated with a person who has, or is perceived to have, any of those characteristics." *See* Cal. Gov't Code § 12926(o); *see also Castro-Ramirez v. Dependable Highway Express, Inc.*, 207 Cal. Rptr. 3d 120, 127 (Cal. Ct. App. 2016) (noting that "when FEHA forbids discrimination based on a disability, it also forbids discrimination based on a person's association with another who has a disability"); *Thompson v. City of Monrovia*, 112 Cal. Rptr. 3d 377, 390 (Cal. Ct. App. 2010) (explaining that a plaintiff may satisfy protected class requirement based on "association with or advocacy on behalf of protected employees") (internal quotation omitted). Alleging discrimination or harassment because of "mere acquaintance or friendship" is sufficient to state a claim under an associational theory. *See Setencich v. Am. Red Cross*, No. C 07-03688 SBA, 2008 WL 449862, at *6 (N.D. Cal. Feb. 15, 2008).

Though Michelucci's race discrimination association theory is not particularly well-developed, the Court finds that he has pled sufficient facts to avoid dismissal. Michelucci alleges that Defendants "harassed" him when "he refused to fail or disqualify" an African-American trainee because they "simply did not want to work with an African-American correctional officer." FAC ¶ 19. Although Michelucci does not explain exactly what this instance of harassment consisted of, he has pled numerous and detailed examples of the harassment and discrimination he faced at work, such that the Court cannot conclude that this allegation is merely conclusory. *See, e.g.*, FAC ¶ 20. And Michelucci has adequately pled that this discrimination was on account of his association with or advocacy for the trainee, who Defendants did not want to work with because of his race. *See* FAC ¶ 19.

Because Michelucci alleges enough facts for the Court to draw the reasonable inference that Defendants discriminated against him based on his association with a person because of that

1  person's race, the Court **DENIES** the motion to dismiss the race discrimination association cause

2  of action.

### C.   The Court Denies the Motion to Dismiss the FMLA Claim

Michelucci contends that Napa County violated the FMLA "when it discriminated against [him] for attempting to seek protected leave, retaliated against [him] in taking adverse employment actions" after he exercised his FMLA rights, "interfered with [his] requests for medical leave," and "constructively terminated [his] employment as a result of [his] requests for FMLA leave." FAC ¶ 69. Napa County moves to dismiss this cause of action, arguing that the "alleged request, even if repeated, that Plaintiff participate in an investigation interview does not, as a matter of law, constitute FMLA interference." *See* Mot. at 8.

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" guaranteed by the FMLA. 29 U.S.C. § 2615(a)(1). Interference includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b). To make out a prima facie case of FMLA interference, a plaintiff must establish that

> (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled.

*Escriba v. Foster Poultry Farms*, 743 F.3d 1236, 1243 (9th Cir. 2014) (internal quotation marks omitted) (quoting *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011)). "In interference claims, the employer's intent is irrelevant to a determination of liability." *Sanders*, 657 F.3d at 778. However, "[t]he FMLA does not entitle the employee to any rights, benefits, or positions they would not have been entitled to had they not taken leave." *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132 (9th Cir. 2003) (citing 29 U.S.C. § 2614(a)(3)(B)). Rather, the FMLA "simply guarantees that an employee's taking leave will not result in a loss of job security or in other adverse employment actions." *Xin Liu*, 347 F.3d at 1132.

The parties appear to dispute only the fifth *Escriba* element, *i.e.*, whether Napa County denied Michelucci FMLA benefits to which he was entitled. Napa County points to persuasive authority to argue that his claim fails as a matter of law because it was allowed to make work-

9

related inquiries while he was on FMLA leave. *See* Mot. at 8–9. For example, another court in this district found (on summary judgment) that no reasonable jury could conclude that the employer interfered with the employee's leave where the employer sent several emails inquiring when the employee would be returning to work. *See Clark v. AmTrust N. Am.*, No. 16-CV-05561-MEJ, 2018 WL 839148, at *17 (N.D. Cal. Feb. 13, 2018). And the Third Circuit has held (also on summary judgment) that "de minimis contacts [that] did not require [the employee] to perform work to benefit the company" did not interfere with the employee's FMLA leave. *See O'Donnell v. Passport Health Commc'ns, Inc.*, 561 F. App'x 212, 218 (3d Cir. 2014). Further, the FMLA regulations expressly allow an employer to "require an employee on FMLA leave to report periodically on the employee's status and intent to return to work." 29 C.F.R. § 825.311(a).

However, these authorities do not establish that Michelucci's claim fails as a matter of law. Michelucci has alleged that Napa County interfered with his FMLA leave by launching an investigation into his complaints nearly a year after he first made them, only after he took protected leave. *See* FAC ¶ 33. And Michelucci alleged that Napa County used the investigation as a "sword" by demanding that he attend an interview and cooperate with their investigation— and then accused him of failing to cooperate when he responded that he was on leave. *See* FAC ¶ 34. Construing the facts in the light most favorable to Michelucci, as the Court must do on a motion to dismiss, these allegations are sufficient at this stage to state a claim for FMLA interference because they go far beyond requiring periodic reporting or other de minimis, work-related contacts, and could support a finding that Napa County used the investigation to discourage Michelucci from taking FMLA leave. Accordingly, the Court **DENIES** the motion to dismiss the FMLA claims.

//
//
//
//
//
//

10

## IV. CONCLUSION

For the reasons outlined above, the Court **GRANTS** the motion to dismiss as to the *Monell* claims but **DENIES** the motion to dismiss as to the associational race discrimination and FMLA claims. If Michelucci intends to re-plead his constitutional claims against Napa County, he must file an amended complaint by May 31, 2019 alleging specific facts to support his claims under the requirements of *Monell*.

**IT IS SO ORDERED.**

Dated: 5/6/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge